IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARK D. RENICK                                               PLAINTIFF

V.                                                           CIVIL ACTION NO.
                                                             3:07-CV-68-SAA

NATIONAL AUDUBON SOCIETY, INC.                               DEFENDANT

MEMORANDUM OPINION

Defendant National Audubon Society, Inc. [the Society] has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, requesting that the court dismiss each of plaintiff Mark Renick's claims in their entirety and enter judgement in its favor. Docket no. 43. The Society presents several affidavits and deposition testimony to support its motion. Renick has responded to the Society's motions, asserting that genuine issues of material fact remain, thus summary judgment on his claims is not proper.

In accordance with the provisions of 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to render an opinion regarding this motion for summary judgment.

I. FACTUAL SUMMARY

The following facts are undisputed. The National Audubon Society is headquartered in New York, New York. Mark Renick began his employment with the Society at its Strawberry Plains Audubon Center [SPAC], a Society-owned facility in Holly Springs, Mississippi in September, 2003. He was employed as the SPAC Director of Education and reported to Madge Lindsay, the Executive Director of SPAC. The application for employment contained the

following language: "If hired, I understand that my employment may be terminated with or without cause and with or without notice at any time, at the will of Audubon or me." Docket no. 43-6, p. 16. In addition, the Audubon employee handbook specifically stated that the nature of the relationship was voluntary in nature, that the employee could resign at any time, and the employer could terminate the employment relationship at will at any time, with or without notice. Docket no. 43-9, p. 7.

Renick assisted SPAC in preparing a grant application for a 21st Century Community Learning Center Grant [the Grant]. The Mississippi Department of Education [MDE] awarded SPAC the Grant, which began on July 1, 2004[1], and Renick was designated as the Project Coordinator of the Grant. The Grant was a "draw down" grant, meaning that SPAC made payments in relation to the Grant expenses and then was reimbursed by the MDE for expenses allowed under the Grant's terms. Both Renick and Lindsay had the right to approve reimbursement requests. Approved expenditures were accounted for by Mary Lynn Riley, an Accounting Manager at SPAC.

In December 2004, Renick received a copy of his 2004 performance management plan, which was a generally positive review. Lindsay, however, did comment on Renick's sometimes insensitive language: "[e]specially at times of frustration and unwary about how it is perceived, Mark's comments and jokes sometimes are taken as insensitive or negative. I am asking Mark to examine this and make positive adjustments." Docket no. 43-2, p. 9.

In August 2005, departing employee Sean Higgins complained to Lindsay that Renick had used racially insensitive and inappropriate comments during a car trip to a work function.

---

[1] *See* docket no. 43-4, p.12.

Docket no. 43-2, p. 13-14. Lindsay referred the complaint and Renick's rebuttal to Linda Brooke, who was the Vice President of Human Resources for the Society based at the Society's headquarters in New York. Docket no. 43-2, p. 17. Brooke investigated the allegations by interviewing several SPAC employees. As a result of this investigation, Renick was placed on final warning on October 25, 2005 for using language that could be interpreted as racist and insensitive and warned that another confirmed report of use of such language would result in his termination. Docket no. 43-6, p. 21.

On November 30, 2005 the Society's Chief Financial Officer Monique Quinn, also based in New York, received a letter from Mississippi attorney Justin Cluck, who stated that he represented Renick. The letter set forth several allegations of wrongdoing including: (a) that certain non-grant expenditures were classified by SPAC as Grant expenditures at Lindsay's behest; (b) that SPAC used excess Grant funds to compensate for shortfalls in the SPAC budget; (c) that Lindsey's requests for accountings that classify SPAC expenses as Grant expenses created a hostile work environment; and (d) that Higgens' allegations against Renick were in retaliation for Renick's failure to abide by Lindsay's accounting directives. Docket no. 47-6, p. 3-6.

In response to Cluck's letter, the Society's national finance office conducted an internal review in December 2005 of SPAC's 21st Century Grant expenditures. The internal review revealed accounting irregularities such as failure to maintain a separate schedule of Grant expenditures, which in turn affected the request forms submitted to MDE. Docket no. 43-13, p. 7. The internal review also specifically addressed allegations set forth in the Cluck letter.

After reviewing the Grant records and interviewing witnesses, the auditor, Tammy

Buffton, found, among other things,[2] that Lindsay did request that certain staff expenses be charged to the Grant, but a portion of those were allowable as indirect costs as outlined in the Grant budget. Docket no. 43-13, p. 8-9. She found no evidence supporting Renick's allegation that Lindsay requested the costs of the SPAC Christmas party be charged to the Grant. Docket no. 43-13, p. 10. The auditor did however, find that certain expenses were not allowable because either they were not proper Grant expenditures or they were not supported by proper documentation. The auditor concluded that it was not inappropriate for Lindsay to have inquired whether certain costs could be assessed to the Grant as indirect costs,[3] and found no evidence supporting Renick's allegation that Lindsay intentionally used $4000.00 of the Grant surplus for SPAC's general budget.[4]

Ultimately, the auditor concluded that the problems associated with SPAC's Grant administration and the Society's year-end close process was indicative of a lack of understanding by both Lindsay and Renick regarding grant administration compliance and procedure in general and little understanding by Lindsay regarding the Society's budgeting procedures and requirements. Docket no. 43-13, p. 14. On February 24, 2006, Les Cory, the Society's National Vice-President and Director of Field Operations based in Tucson, issued a final warning on both Renick's[5] job performance, which cited noncompliance with the Society's policies and procedures and with requirements set forth in the Grant itself. In February, 2006, Lindsay was

---

[2] The auditor made other conclusions which are not memorialized in this recitation of the facts but are found in the record at Docket no. 43-13, p. 7-14.

[3] Docket no. 43-13, p.12. and 13.

[4] Docket no. 43-13, p. 14.

[5] Renick's final warning available at Docket no. 43-8, p. 20-22.

4

also placed on final warning concerning her job performance.[6] As a result of the auditor's report, Renick no longer reported to Lindsay; supervisory authority over Renick was transferred to Roger Still, a Society Vice President and Missouri State Director-Renick then reported directly to Still. Docket no. 43-2, p.4. Further, the Society's corporate finance department assumed administration of grants and the cash handling responsibilities were removed from SPAC and assumed by other employees of the Society. Docket no. 43-2, p.4.

In February 2006, the Society sent Charlotte Bryant, the Grant Coordinator for MDE, a copy of the finance department's audit. Docket no. 43-13, p. 4. MDE conducted a monitoring visit of the Grant at SPAC on February 28, 2006, and found one exception, which required immediate correction – that school principals were being paid as after-school teachers in addition to their principal salaries in violation of Mississippi law. MDE found other accounting irregularities that required attention but were not of an exigent nature. The Society addressed the issues and submitted a corrective action plan to MDE,[7] which cleared the Society of the exception on April 7, 2006.[8] Neither MDE nor any other state or federal agency, made any allegations or findings that the Society engaged in any criminal activity with respect to the Grant. Docket no. 43-13, p. 5.

A few months later, Kristin Lamberson, a SPAC employee, reported to Lindsay that around May 20, 2006, Renick called an individual a "cunt;" she reported the incident to Brooke on a separate occasion. Docket no. 43-16, p. 2. Lamberson's statement also represents that

---

[6] Docket no. 43-2, p. 4.

[7] Docket no. 43-15, p. 29-31 and Docket no. 43-12, p. 17-19.

[8] Docket no. 43-15, p. 28.

Renick used racially insensitive or inappropriate language on other occasions. Docket no. 43-16, p.2.  In addition, SPAC Accounting Manager Mary Lynn Riley told Brooke that Renick had used the word in May of 2006, but she did not recall the specific incident that Lamberson complained of.  Docket no. 43-9, p. 3.  Brooke found Lamberson and Riley to be credible.  Docket no. 43-9, p. 3. On June 5, 2006, Brooke and Still spoke with Renick and terminated his employment for use of inappropriate and insensitive language. Docket no. 43-3, p. 2; Docket no. 43-9, p.3. Renick denies he used such language, but he does acknowledge that he was terminated for using inappropriate language.  Docket no. 43-3, p. 2.

Renick brought this suit alleging that he was terminated from his employment with the defendant in retaliation for reporting the alleged 21st Century Grant accounting violations.  In addition, he alleges that Lindsay created a hostile work environment and that he suffered and continues to suffer humiliation, mental anxiety and stress as a result of the wrongful termination of his employment.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  After a proper motion for summary judgment is

made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). If the moving party meet its burden, the non-movant must identify specific facts demonstrating there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). Unsubstantiated assertions, improbable inferences and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 313 (5th Cir. 2003) (internal citations omitted). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at

1075.

## B. WRONGFUL DISCHARGE

This action is brought in federal court pursuant to 28 U.S.C. § 1332, and both parties agree that Mississippi law is applicable. Mississippi has adhered to the employment-at-will doctrine since 1858. *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987). This common law rule allows for an employment contract to be terminated by either party, with or without justification. *Wheeler v. BL Development*, 415 F.3d 399, 402 (5th Cir. 2005), citing *HeartSouth, PLLC. v. Boyd,* 958 So.2d 1095, 1108 (Miss. 2003). The Mississippi Supreme Court carved out a narrow exception to this doctrine in *McArn v. Allied Bruce-Terminex Co., Inc.*, 626 So.2d 603 (Miss. 1993). Under *McArn*, an employee who is discharged for refusing to participate in an illegal act or for reporting the illegal acts of his employer or anyone else is not barred from bringing an action in tort damages against his employer. 626 So.2d at 607.

A good faith belief that an action was criminal is insufficient to invoke the *McArn* exception. *Stephen v. Winston County, Mississippi*, 2008 WL 4813829, *7-8 (N.D. Miss. 2008), citing *Wheeler*, 415 F.3d at 404. The Fifth Circuit has declined to extend the narrow public policy exception to the employment at will doctrine found in *McArn* to include an employee who reasonably believed that he was reporting illegal activity; the *McArn* exception is limited to complaints of or refusals to participate in illegal activity. *See Wheeler*, 415 F.3d at 404, discussing *Drake v. Advance Construction Services, Inc.*, 117 F.3d 203, 204 (5th Cir. 1997).

Moreover, the *McArn* exception to the employment-at-will doctrine applies only to illegal acts which warrant the imposition of criminal penalties as opposed to mere civil penalties.

8

*Wheeler*, 415 F.3d at 404. Although *McArn* does not require that the plaintiff prove that a crime was committed, *Howell v. Operations Management International, Inc.*, 77 Fed.Appx. 248, 252 (5th Cir. 2003), citing *Peracelsus Health Care Corp. v. Willard*, 754 So.2d 437, 443 (Miss. 1999), there must be evidence to demonstrate that the complained of activity constituted criminal activity.

As a threshold issue to invoke the *McArn* exception, Renick *must* demonstrate that the activities that he complained of, specifically that Lindsay requested that he allocate certain expenses to the Grant, constituted either criminal activity or a directive that he engage in criminal activity. Renick, however, is not required to prove that a criminal act actually occurred.

After review of the facts and applicable law in the instant case, it is clear that the plaintiff has at least shown a genuine issue of material fact regarding whether there was actual criminal activity or he was instructed to engage in criminal activity with regard to the Grant. Although it is clear that Lindsay frequently requested that plaintiff allocate certain expenses to the Grant, Docket no. 43-3, 21-2, and that plaintiff had a good faith belief that there was a misappropriation of funds, it is unclear whether there was in fact either criminal activity or a directive to engage in criminal activity.

The *McArn* exception is limited to the reporting of or refusal to participate in *criminal* activities. The plaintiff's good faith belief that the actions were possibly criminal does not necessarily warrant the invocation of the *McArn* exception. Renick invokes Miss. Code Ann. § 97-7-11 (1972), which makes it a crime to conspire to defraud any department of the state by obtaining or aiding in the payment or allowance from the public funds *of the state* and alleges that Lindsay, the Society's employee, has violated this law. Docket no. 48, p.15. However,

9

neither party has presented sufficient evidence to demonstrate whether the funds used for and from the Grant are federal or state funds for purposes of applying § 97-7-11 to the instant litigation. Further, the defendant has failed to show that there exists no genuine issue of material fact regarding the alleged criminal activity or alleged requests to engage in criminal activity. The facts are simply too numerous and contradictory for the court to make a determination on this issue under the current standards. A jury must make that determination. The court has reviewed the laws and regulations referenced by the plaintiff and determined that there remains a genuine issue of material fact as to whether § 97-7-11 is applicable to this matter. Thus, defendant's motion for summary judgement should be denied.

### C. VIOLATION OF AUDUBON'S EMPLOYEE HANDBOOK

Renick contends that the Society violated its employee handbook by terminating him in retaliation for reporting Lindsey's allegedly illegal activities, which was a violation of its whistle blower policy. Under Mississippi law, an employee handbook cannot be considered a contract when the handbook contains an express disclaimer that the relationship may be terminated at any time. *Lee v. Golden Triangle Planning and Development Dist.*, 797 So.2d 845, 848 (Miss. 2001) citing to *Hartle v. Packard Elec.*, 626 So.2d 106, 109 (Miss. 1992). The employee handbook contained a valid disclaimer by outlining that under the employment-at-will policy either party may terminate the relationship at any time for any reason. This disclaimer providing that the relationship may terminated at any time, negates any contractual obligation found in the handbook. Without a contractual obligation to follow its policies in the handbook, there can be no claim that the defendant violated its handbook. As there are no obligations under the handbook with respect to the whistle blower policy, the court need not inquire into Renick's

allegations, and the court grants the Society's motion for summary judgment on this issue.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Renick also contends that the Society's actions amount to the infliction of emotional distress. In order to prevail in a claim for intentional infliction of emotional distress, Renick must show that the conduct complained of was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D.Miss.1996), quoting Restatement (Second) of Torts § 46 cmt. d. (1965). Furthermore, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Lawson v. Heidelberg Eastern*, 872 F. Supp. 335, 338 (N.D.Miss.1995), quoting Restatement § 46 cmt. d.. Damages for such claims are typically not recoverable in employment disputes. *Pegues*, 913 F. Supp. at 982. Rather, "[o]nly in the most unusual cases does the conduct move out of the 'realm of an ordinary employment dispute ' into the classification of 'extreme and outrageous,' as required for the tort of intentional infliction of emotional distress." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994), citing *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 307 (5th Cir.1989) and *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1145 (5th Cir.1991).

Renick alleges that Lindsay's constant requests to allocate certain expenses to the Grant and his refusals to do so caused Lindsay to threaten to fire him, which ultimately created a stressful work environment, and that his relationship with Lindsay deteriorated to the point that she would hardly speak to him in staff meetings. Docket no. 48, p. 18-19. While this indeed may have been an uncomfortable work environment, the plaintiff has not alleged any conduct that can

be considered so egregious as to be considered outrageous in civilized society. Moreover, he has not presented any evidence of behavior that is outside the realm of an ordinary employment dispute. In light of the plaintiff's failure to meet his burden to present evidence of outrageous or extreme behavior, the court grants the defendant's motion for summary judgment on this issue of intentional infliction of emotional distress.

### E. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Society seeks judgment on Renick's claim of negligent infliction of emotional distress, asserting that the claim is barred by the exclusive remedy found in the Mississippi Workers Compensation Act [the Comp Act], Miss. Code Ann. § 71-3-9, et seq. (1972). The courts have consistency held that this provision of the Comp Act does indeed bar any tort claim grounded in negligence. *Disney v. Horton*, 2000 U.S. Dist. LEXIS 5359, *27-29 (N.D. Miss. 2000) (internal citations omitted).

The Comp Act does not generally apply to nonprofit or charitable organization. Miss. Code Ann. § 71-3-5. A charitable organization, however, may assume liability under the Comp Act if it purchases a valid workers' compensation insurance policy. *Id.* The assumption of liability is in effect as long as the workers' compensation policy is in effect. *Id.*

The Society has not presented any evidence demonstrating that it has assumed liability under the Comp Act. Thus, there is a genuine issue of material fact as to whether the provisions of the Comp Act apply to the Society, and the court denies the Society's motion for summary judgment on this issue.

A judgment in accordance with this opinion will issue this day.

SO ORDERED, this the 12th day of February, 2009.

be considered so egregious as to be considered outrageous in civilized society. Moreover, he has not presented any evidence of behavior that is outside the realm of an ordinary employment dispute. In light of the plaintiff's failure to meet his burden to present evidence of outrageous or extreme behavior, the court grants the defendant's motion for summary judgment on this issue of intentional infliction of emotional distress.

### E. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Society seeks judgment on Renick's claim of negligent infliction of emotional distress, asserting that the claim is barred by the exclusive remedy found in the Mississippi Workers Compensation Act [the Comp Act], Miss. Code Ann. § 71-3-9, et seq. (1972). The courts have consistency held that this provision of the Comp Act does indeed bar any tort claim grounded in negligence. *Disney v. Horton*, 2000 U.S. Dist. LEXIS 5359, *27-29 (N.D. Miss. 2000) (internal citations omitted).

The Comp Act does not generally apply to nonprofit or charitable organization. Miss. Code Ann. § 71-3-5. A charitable organization, however, may assume liability under the Comp Act if it purchases a valid workers' compensation insurance policy. *Id.* The assumption of liability is in effect as long as the workers' compensation policy is in effect. *Id.*

The Society has not presented any evidence demonstrating that it has assumed liability under the Comp Act. Thus, there is a genuine issue of material fact as to whether the provisions of the Comp Act apply to the Society, and the court denies the Society's motion for summary judgment on this issue.

A judgment in accordance with this opinion will issue this day.

SO ORDERED, this the 12th day of February, 2009.

                                                        ___/s/ S. ALLAN ALEXANDER_____
                                                        UNITED STATES MAGISTRATE JUDGE